**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

TILIA NEWSOME, *as Administrator of the Estate of JOHN NEWSOME SR, Deceased,*

Plaintiff,

v.

MADISON COUNTY, ILLINOIS, *et al.*,

Defendants.

Case No. 3:16-cv-01103-JPG-DGW

## MEMORANDUM AND ORDER

**J. PHIL GILBERT, DISTRICT JUDGE**

This is a civil rights case stemming from an incident at the Madison County Jail against twenty defendants. It now comes before the Court on the defendants' motion to dismiss for failure to state a claim. (Doc. 61.)

## I. BACKGROUND

One day in July 2016, an officer arrested John Newsome and transported him to the Madison County jail. Officials at the jail then placed Mr. Newsome in the day room: a space open to a number of detainees and inmates during specific times of the day. One of these other detainees was Terrence E. Lee, a man with an extensive criminal record—including first-degree murder. According to the plaintiff, Lee had been involved in a number of fights at the jail. He injured other detainees (including sending two to the hospital) and threatened numerous jail personnel. But the jail officials only segregated Lee from the general population one time, never designated him as a special management or high security prisoner, and continued to allow him unsupervised use of the day room around other detainees. (Compl. 4–5, ECF No. 58.)

The plaintiff alleges that when John Newsome attempted to use the television in the day room, Lee became outraged. Mr. Newsome attempted to flag the attention of the guards, but the

guards failed to act. Lee then began to punch and kick Mr. Newsome, which was captured on the jail's security cameras. At some point, Lee left the day room, but returned to attack Mr. Newsome a second time. Following this second attack, Lee succumbed to his injuries and died in the day room. (Compl. 5–7, ECF No. 58.)

Now, Mr. Newsome's daughter and the administrator of his estate—Tilia Newsome—brings this action against twenty defendants, including Madison County, Sheriff John Lakin, 17 employees of the Madison County Sheriff's Office, and an unknown number of John Doe defendants. The suit alleges a number of constitutional and state-law claims arising from Mr. Newsome's death at the jail.

## II. LEGAL STANDARDS

### A. 12(b)(6) Motions to Dismiss

When reviewing a Rule 12(b)(6) motion to dismiss, the Court accepts as true all allegations in the complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To avoid dismissal under Rule 12(b)(6) for failure to state a claim, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). This requirement is satisfied if the complaint: (1) describes the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests and (2) plausibly suggests that the plaintiff has a right to relief above a speculative level. *Bell Atl.*, 550 U.S. at 555; *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *EEOC v. Concentra Health Servs.*, 496 F.3d 773, 776 (7th Cir. 2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl.*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim

for relief will...be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

**B. 18 U.S.C. § 1983**

In order to prove a § 1983 claim against a police officer, a plaintiff must show that the officer (1) deprived the plaintiff of rights secured by the Constitution or laws of the United States, and (2) that the defendant was acting under color of state law. *Ienco v. City of Chicago*, 286 F.3d 994, 997-98 (7th Cir. 2002); *see Gomez v. Toledo*, 446 U.S. 635, 640 (1980); *McKinney v. Duplain*, 463 F.3d 679, 683 -84 (7th Cir. 2006); *Brokaw v. Mercer Co.*, 235 F.3d 1000, 1009 (7th Cir. 2000). A plaintiff can also bring a § 1983 claim against a private party if the plaintiff shows that the private party "conspired or acted in concert with state officials to deprive [the plaintiff] of his civil rights." *Case v. Milewski*, 327 F.3d 564, 567 (7th Cir. 2003) (citing *Adickes v. S.H. Kress and Company*, 398 U.S. 144, 152 (1970)).

Additionally, a municipality can be liable under § 1983 if (1) the municipality had an express policy calling for constitutional violations; (2) it had a widespread practice of constitutional violations that was so permanent and well settled as to constitute a custom or usage with the force of law; or (3) if a person with final policymaking authority for the county caused the constitutional violation. *Monell v. New York City Department of Social Services*, 436 U.S. 658, 694 (1978); *McCormick v. City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000). A municipality is liable only when its "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy," is the moving force behind the constitutional violation. *Monell*, 436 U.S. at 694.

**III. ANALYSIS**

The complaint in this case is extensive. The second-amended complaint contained 100 counts, but Newsome has since consolidated it into a third-amended complaint to make it more manageable. The claims are as follows:

**Count I:** 4th Amendment *Monell* claim against Madison County, Illinois.

**Count II:** 14th Amendment *Monell* claim against Madison County, Illinois.

**Count III:** 4th Amendment claim against Sheriff John Lakin, in his individual capacity.

**Count IV:** 14th Amendment claim against Sheriff John Lakin, in his individual capacity.

**Count V:** 4th Amendment claim against the remaining defendants, in their individual capacities.

**Count VI:** 14th Amendment claim against the remaining defendants, in their individual capacities.

**Count VII:** Willful and wanton conduct survival action against Madison County, Illinois.

**Count VIII:** Willful and wanton conduct claim against Madison County.

**Count IX:** Willful and wanton conduct wrongful death claim against Madison County, Illinois.

**Count X:** Willful and wanton conduct survival action against Sheriff John Lakin, in his individual capacity.

**Count XI:** Willful and wanton conduct claim against Sheriff John Lakin, in his individual capacity.

**Count XII:** Willful and wanton conduct wrongful death claim against Sheriff John Lakin, in his individual capacity.

**Count XIII:** Willful and wanton conduct survival action against the remaining defendants, in their individual capacities.

**Count XIV:** Willful and wanton conduct claim against the remaining defendants, in their individual capacities.

**Count XV:** Willful and wanton conduct wrongful death claim against the remaining defendants, in their individual capacities.

## A. Counts I–VI: The Constitutional Claims

### *i. The Individual Defendants*

This case presents a relatively unique scenario. Counts III–VI allege that the individuals named therein failed to protect Mr. Newsome at the Madison County Jail in thirty-five different ways (and Sheriff Lakin in eighteen ways), including allowing Terrence Lee—whom the defendants allegedly knew presented a high risk of violence to others—to use the day room unsupervised; failing to properly monitor the overcrowded day room; failing to perform proper well-being and security checks; and more. (*See* Compl. 13–28, ECF No. 58.) These "failure to protect" claims generally arise under the deliberate indifference standard rooted in the Fourteenth and Eighth Amendments. *See, e.g., Pinkston v. Madry*, 440 F.3d 879, 889 (7th Cir. 2006); *Brown v. Budz*, 398 F.3d 904, 909 (7th Cir. 2005). That is because the plaintiffs in those cases are almost universally (1) pre-trial detainees whom have already appeared before a judge for a probable cause determination—known as a *Gerstein* hearing—or (2) prisoners already convicted of a crime. *See Gerstein v. Pugh,* 420 U.S. 103, 114 (1975) (a judicial determination of probable cause is a "prerequisite to extended restraint of liberty following arrest.") Here, Mr. Newsome falls into neither of those categories: Mr. Newsome died at the jail shortly after he was arrested and before his probable cause hearing. Accordingly, Mr. Newsome is what is known as a pre-*Gerstein* arrestee.

When a pre-*Gerstein* arrestee brings a constitutional claim arising from his conditions of confinement, it is typically covered by the Fourth Amendment's reasonableness test—a more stringent standard than Eighth Amendment deliberate indifference. *See Kingsley v. Hendrickson,* 135 S. Ct. 2466, 2473, 192 L. Ed. 2d 416 (2015) (holding that the Fourth Amendment applies to a pre-trial detainee's claim of excessive force); *Lopez v. City of Chicago,* 464 F.3d 711, 719 (7th Cir. 2006) ("Our cases thus establish that the protections of the Fourth Amendment apply at

arrest and through the Gerstein probable cause hearing, due process principles govern a pretrial detainee's conditions of confinement after the judicial determination of probable cause, and the Eighth Amendment applies following conviction."); *Williams v. Rodriguez*, 509 F.3d 392, 403 (7th Cir. 2007). And that makes perfect sense: if the police arrest a man and toss him in jail, and that man has not yet appeared before a judge to determine whether there was probable cause for the arrest in the first place, surely the jail should exercise even more caution than usual to ensure that they are not violating that man's rights. *See Kingsley*, 135 S.Ct. at 2473–2475. While the Seventh Circuit has not yet had the opportunity to apply this rationale to failure to protect claims, they have already done so with Eighth Amendment inadequate medical care cases. *See, e.g., Ortiz v. City of Chicago*, 656 F.3d 523, 530 (7th Cir. 2011) ("Because Molina had not yet benefitted from a judicial determination of probable cause, otherwise known as a Gerstein hearing, we agree that the Fourth Amendment applies."); *King v. Kramer*, 763 F.3d 635, 641–48 (7th Cir. 2014) (reversing and remanding when the district court incorrectly applied the Eighth Amendment standard instead of the Fourth Amendment's reasonableness test). And considering the Supreme Court has recently extended the doctrine to excessive force claims by pre-trial detainees, it is logical to also apply the doctrine to failure to protect claims in the same manner. *Kingsley*, 135 S. Ct. at 2473.

Both parties recognized this distinction in their briefs. Newsome claims that she pled her Fourteenth and Fourth Amendment claims in the alternative so that she may proceed on whichever the Court deems correct. The defendants, however, assert that the Fourteenth/Eighth Amendment deliberate indifference standard should apply here—but they are incorrect in light of *Kingsley, Lopez, Williams, Ortiz,* and *King*. The defendants also argue that "the Fourth Amendment does not provide remedies for failure to protect claims" at all, but that is wrong.

Failure to protect claims arising under the Fourth Amendment focus on an individual's right to be free from an unreasonable seizure, and the Seventh Circuit has long recognized that theory as valid. *Yang v. Hardin*, 37 F.3d 282, 284–86 (7th Cir. 1994). Accordingly, the Court will dismiss the 14th Amendment claims—Counts II, IV, and VI—for failure to state a claim for relief, and proceed on the Fourth Amendment claims.

The next question is whether Newsome's Fourth Amendment claims survive a Rule 12(b)(6) analysis. Under the Fourth Amendment's reasonableness test, her complaint must plausibly allege that the "defendants' conduct was objectively unreasonable under the circumstances." *Lopez*, 464 F.3d at 718; *Bell Atl.*, 550 U.S. at 555. This is a simple balancing test for the finder of fact. *Ortiz*, 656 F.3d at 531. And here, Newsome has met her burden at the pleading stage: although her laundry-list approach may complicate things later in this case, she technically has stated a claim against all of the individual defendants. Count V alleges 35 different ways that the individual defendants may have been unreasonable in respect to Newsome's condition of confinement. (Compl. 18–23, ECF No. 58.) On a similar note, Count III alleges 18 ways that Sheriff Lakin may have been involved in the events, through either (1) direct participation, (2) failing to act with reckless disregard, or (3) conduct occurring at his direction or with his knowledge and consent. (*Id.* at 13–15); *see Palmer v. Marion Cty.*, 327 F.3d 588, 593–94 (7th Cir. 2003) (explaining the personal involvement requirement); *see also Kelly v. Mun. Courts of Marion County*, 97 F.3d 902, 909 (7th Cir. 1996); *Rascon v. Hardiman*, 803 F.2d 269, 274 (7th Cir. 1986).

***ii. The County***

Newsome has also met her burden at this early stage on her *Monell* claim against Madison County. Count I alleges that the County "had, adopted, and/or promulgated customs,

decisions, polices, and/or practices that were objectively unreasonable and that violated the Constitutional rights of its pre-*Gerstein* arrestees, including Decedent," in 16 different ways. These include overcrowding the county jail; failing to promulgate policies regarding the housing of detainees; permitting arrestees to be housed with pretrial detainees; failing to monitor arrestees; placing pre-*Gerstein* arrestees in the day room; failing to promulgate policies that identify and separate high-security prisoners from the rest of the pack in this overcrowded environment; failing to provide adequate staffing and security, and more. (Compl. 8–10, ECF No. 58.) These allegations state a claim centered on on the second theory of *Monell* liability: "a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law." *Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005); *Monell*, 436 U.S. at 694. Accordingly, Count I describes the *Monell* claim in detail and raises the question of relief to above a speculative level. *Bell Atl.*, 550 U.S. at 555.

The defendants claim that Count I fails anyways because courts in this circuit generally dismiss *Monell* claims in which "[a]ll of the allegations in the Complaint pertain exclusively to [the plaintiff]." *Davis v. Metro. Pier & Exposition Auth*., 2012 WL 2576356, at *12 (N.D. Ill. July 3, 2012); *see, e.g.*, *Lewis v. Cnty. of Cook*, 2011 WL 839753, at *14 (N.D. Ill. Feb. 24, 2011); *Travis v. City of Chi.*, 2012 WL 2565826, at *5 (N.D. Ill. June 29, 2012). The defendants take specific issue with the fact that "Plaintiff does not even allege that another detainee was murdered as a result of the Defendant's alleged actions." (D.'s Mot. to Dismiss 14, ECF No. 61.) This argument goes too far: Newsome has made numerous allegations in the complaint that Madison County failed on a number of levels to protect its pre-*Gerstein* arrestees, and the Court

will not dismiss the claim simply because Newsome failed to allege that another detainee was murdered. Newsome has met her burden at the pleading stage.

**B. Counts VII–XV: The State Law Claims**

The remaining counts allege a collection of willful and wanton conduct state-law claims against all of the defendants. As an initial matter, the defendants argue that the state-law claims against Madison County and Sheriff Lakin fail because those parties cannot be held vicariously liable for the actions of the deputy sheriffs. (D.'s Mot. to Dismiss 16–17, 23–24, ECF No. 61); *Moy v. County of Cook*, 640 N.E.2d 926 (1994) (holding that a county could not be held vicariously liable for the acts of deputy sheriffs); *Chaney v. City of Chicago*, 901 F. Supp. 266, 268 (N.D. Ill. 1995) (Illinois law "does not impose liability on the sheriff for a deputy's intentional or wanton misconduct.") The defendants' argument, however, misrepresents the complaint: the complaint alleges that both Madison County and Sheriff Lakin were directly involved in numerous ways. (*See* Compl. 28–31, 33–36, ECF No. 58.)

With that out of the way, the second matter is more complicated: the defendants have cited seven state-law immunity provisions in their favor. Public entities are liable in tort in the same manner as a private party unless an immunity provision applies, and it is the public entities' burden to establish as much. *Trtanj v. City of Granite City*, 379 Ill.App.3d 795 (2008); *DeSmet v. County of Rock Island*, 219 Ill.2d 497, 504 (2006). If an immunity provision applies, it would render this Court without subject-matter jurisdiction over the corresponding state-law claims; accordingly, Federal Rule of Civil Procedure 12(b)(1) governs the immunity analysis in federal courts. Under that rule—as with a Rule 12(b)(6) motion—all well-pleaded factual allegations are accepted as true and construed in the light most favorable to the plaintiff. *Lee v. City of Chi.*, 330 F.3d 456, 468 (7th Cir. 2003).

A defendant may defeat an immunity provision, however, if the complaint properly alleges willful and wanton conduct by the defendants: "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." 745 ILCS 10/1–210; *Doe v. Chicago Board of Education*, 339 Ill.App.3d 848, 856 (2003). The Seventh Circuit has said that this standard is very similar to the deliberate indifference standard. *Chapman v. Keltner*, 241 F.3d 842, 847 (7th Cir. 2001).

As the defendants have noted, the Local Governmental Employees Tort Immunity Act contains several relevant provisions to this case. One section states that local public entities and employees are immune from suits over "failure to provide sufficient equipment, personnel, supervision or facilities [within a jail]." 745 ILCS 10/4-103. Another collection of provisions provide immunity when an official fails to provide certain types of medical care. *See* 745 ILCS 10/4-105, 6-105, & 6-106(a). Another provision provides immunity for public employees determining policy matters within their discretion. 745 ILCS 10/2-201. Yet another provision provides immunity for public entities and employees for failure to provide adequate police protection or service, which extends to detainees in custody. 745 ILCS 10/4-102; *Rush v. City of Chicago*, 163 Ill.App.3d 725, 727 (1st Dist. 1987). And a final provision provides immunity for public employees acting within the scope of their employment that may be liable for an injury caused by the act or omission of another person. 745 ILCS 10/2-204.

The defendants have cited all of these provisions in their favor, but they have a problem: Newsome pled in each of her state-law claims that the defendants engaged in willful and wanton conduct, and the Court must accept those well-pleaded allegations as true and construe them in the light most favorable to Newsome. *Lee* 330 F.3d at 468. While the Court is aware that willful and wanton conduct consists of more than mere inadvertence or incompetence, *Geimer v.*

*Chicago Park District*, 272 Ill.App.3d 629 (1995), Newsome has pled far more than that: each of her state-law counts meticulously sets out a number of ways in which the defendants may have exhibited utter indifference or conscious disregard for the safety of Newsome and other detainees at the jail. (*See* Compl. 28–31 [Madison County]; 33–36 [Sheriff Lakin]; 38–42 [the individual defendants], ECF No. 58.) While the fact-finder in this case may later have to re-visit the issue of whether the alleged conduct was truly willful and wanton, Newsome has carried her burden on this matter at this early stage. *See Fatigato v. Village of Olympia Fields*, 281 Ill.App.3d 347 (1996) (explaining that whether conduct is "willful and wanton" is a question of fact for a jury to decide).

## CONCLUSION

For the foregoing reasons, the Court **GRANTS in part** and **DENIES in part** the defendants' motion to dismiss. (Doc. 61.) The Court **DISMISSES** the Fourteenth Amendment claims: Counts II, IV, and VI. The remaining claims will proceed.

**IT IS SO ORDERED.**

**DATED: MAY 3, 2018**

**s/ *J. Phil Gilbert***
**J. PHIL GILBERT**
**DISTRICT JUDGE**